We'll hear argument next in Escobar v. Nat'l Mainten. Contractors, LLC Ms. Nichols? Good morning, and may it please the Court. My name is Leah Nichols, and I represent the Appellants Cross-Appellees, and I'd like to Plaintiffs are janitorial workers who allege NMC illegally preyed on vulnerable immigrants, conning them into exploitative, so-called franchise agreements, and taking advantage of their subminimum wage labor. NMC seeks to force the workers to arbitrate those claims. However, none of the workers' claims can be forced into arbitration. First of all, no agreements to arbitrate were formed. Second, even if they were, the arbitration agreements are unenforceable because they're unconscionable, and the unconscionable term is so prevalent that they are not severable. Well, hold on. The district court found that two sections were unconscionable. Even if we followed your argument, what's one additional section? Why can't we sever that and save the arbitration agreement? Your Honor, there are four unconscionable provisions in the contract, and I'll explain what those are. And the reason that they can't be severed is because, one, there are so many. In McKee, the Washington court had four unconscionable provisions and said they were too prevalent to be severed. In Torrance, there were three unconscionable provisions and there were too many to be severed. And the idea is that once you have an agreement that has so many unconscionable provisions, that it's unsalvageable. And the reason why is because there's no incentive then for drafters to not put unconscionable provisions in their agreements. They can put as many unconscionable provisions in there as they want, and they'll just be severable and they can move on. So here I want to get to what the four unconscionable provisions are. So the first, of course, is the one that NMC does not appeal. So at this point, it's final that the prohibition on punitive damages is unconscionable and NMC has not appealed that decision. Second, the forum selection requirement that any arbitration take place in Minnesota is also unconscionable, and that's what the district court held. So here on appeal, NMC appeals that decision, but the only basis for its appeal is that the Supreme Court's decision in Atlantic Marine somehow displaces the general unconscionability rules and the general, if you're in federal, if you're looking at the federal rules of Bremen rule. Under both federal and state law, a forum selection clause is not enforceable if it would require parties to essentially give up their claims because the forum is so difficult for them to get to. NMC hasn't argued otherwise. However, NMC has argued that Atlantic Marine somehow displaces that. It does not. What Atlantic Marine does is it's premised on the existence of a valid forum selection clause. It's in Atlantic Marine itself. It's a valid forum selection clause. And in a case that is not cited in our briefing, but it's Dupuis and Sales versus Halmedica Osteonics, 28F4956, earlier this year, this court said that when you have a challenge to a forum selection clause, you first must decide whether it's valid. And only if it's valid do you apply Atlantic Marine. So Atlantic Marine simply doesn't apply here because there's no valid forum selection clause. And NMC, again, does not argue that it is somehow perfectly conscionable and appropriate to force these workers to arbitrate in Minnesota. So the third unconscionable provision is the cost provision. So this contract says that arbitration... But the case you just cited that you said is not cited in the briefs? Yes, that's right. What circuit is that from? That's from this court. That's from this court. Earlier this year. Say it again. The name is... It's called Dupuis Synth Sales versus Halmedica and that's 28F4956. And that case is also... It's consistent with what other circuits have done, right? They've all said, look, Atlantic Marine... Look at the validity and then you go... Right, right. And Atlantic Marine itself talks about, this is how we treat valid forum selection clauses, right? And so you play that out and Dupuis says, under California law, in that case, California law was at issue that the forum selection clause was unconscionable and therefore you don't reach Atlantic Marine. So there's two unconscionable clauses. So the third is the cost provision. So this arbitration agreement says it'll be governed by the AAA commercial rules. And frankly, I will say that's a function of the fact that, in our view, NMC is misclassifying these workers. They should be employees and should be potentially subject to the employee rules. But here, NMC has chosen the commercial rules. Under the commercial rules, the default is that the parties split the cost of the arbitrator 50-50. We have a expert opinion here that's uncontested by NMC that the cost of just paying the arbitrator fee... Now, I'm not talking about... These are not administrative fees, lawyer fees, or anything else. Just the cost of paying an arbitrator to oversee these is going to be between about $11,000 and about $40,000. But that's just the default, right? The arbitrator can assign the costs however he or she wants at the end of the proceeding, right? That's correct, Your Honor. The commercial rules permit the arbitrator to do that. However, that does not cure the problem. And here's why. One, if you look at Torrance... I think it's Torrance. No, sorry. It's Young versus Regis, which is cited in the Oregon trial lawyer's brief. And that case was very similar to this one, where the default was that there was a split in fees, and then at the end of the day, the arbitrator could choose to split the fees in a different way if he or she chose. It was still unconscionable because there was that default that the parties are going to be split. Now, the cases that perhaps you're referring to, Judge Miller, where the district court said, look, where it's speculative as to what fees would be required, then we're not going to say it's unconscionable. In those cases, in Motzinger and Willis, and even in the US Supreme Court's decision in Greentree, there was simply nothing at all about how the costs would be divided. There was no evidence as to what the costs would be or whether they could be afforded. Nothing like that. There was no provision at all about how costs should be divided. Here, we have a default. Suppose it explicitly said that the costs would be awarded to the winner, whereas the loser would have to pay the costs. Would that change the outcome in your view? No, Your Honor. I think here it's important to put ourselves in the shoes of the plaintiffs here. Because arbitration could cost up to $40,000, and I will say the expert also said that his estimate of what the arbitrator's rate would be is conservative here. That means that if I'm the plaintiff and I want to go to arbitration, I'm potentially on the hook for $40,000. And none of these plaintiffs, not a single one, has $40,000 in cash. But litigation is expensive too, right? It's not expensive in the same way. You don't have to pay the court more than the filing fee, but the fees for counsel and various other expenses that you incur. And the way that we deal with that for people who have liquidity constraints is through contingent fee counsel, right? Why isn't that an adequate solution here? Your Honor, because if there's a contingency fee counsel, if you lose, you don't have to pay your lawyers still. Here, if you lose, you still have to pay the arbitrator. So it's a fee, it's a cost, really more accurate of a cost issue, not a fee. Right. It's described as the arbitrator fee, but it's really a cost and not an attorney fee. I and so here, right, they're potentially on the hook for, you know, up to $40,000. And I think here, unlike in your hypothetical, Judge Miller, there is no standard as to cabineting the arbitrator's discretion as to how the arbitrator would divide the arbitration costs among the parties. There's nothing at all governing it. And of course, there's no, because it's arbitration, there's no appeal. So it's potentially an enormous hit to these plaintiffs who the, you know, there's uncontested evidence about their, you know, detailed evidence about their income, their expenses and their assets, right? The district courts struggle with this very issue because these provisions are prevalent throughout the country. Are they all going to be considered unconscionable? No, Your Honor. And here's why. Well, one, I will say, as I noted, this is, these are the AAA commercial rules. They're designed to govern business to business disputes. Now, the commercial rules are typically not going to come into play when you have an employer-employee dispute or a consumer-company dispute. And under the AAA employment rules and under the AAA consumer rules, the company bears the cost of the arbitrator. And so this is a little bit of a unique scenario, or I should say not unique so much as a function of NMC's, what we think is a misclassification problem, right? Is that they're applying rules that are not meant to be applied to this power dynamic. So to answer the first part of your, so again, to sort of summarize the first part of my answer, in most cases where you have a well-resourced company versus a much less well-resourced individual, these rules are not going to apply. And then second, in response to your question, the, here we do have to, you know, under, under Greentree and Motzinger and Willis, they all say, look, you have to present, you know, even though we are going to, on one hand, compare it to the cost of litigation, we're also going to look to see if the plaintiffs are in a position to pay and bear the costs. So here again, we've submitted evidence as to the, that's undisputed, as to their, the plaintiff's income expenses, as well as their cash on hand. And again, none of them have $40,000. So to go on to the, to move on to the fourth unconscionable prong, or unconscionable clause here, the fourth one is that there is this, this lopsided exception to arbitration. So NMC can go to court to get an injunction if there's a breach of contract, or even just a threat of a breach of a contract, but the plaintiffs have no such ability to do that. And what courts have said that when you're looking at these lopsided provisions, they're not And so once you have a lopsided provision, in the context of a contract that was, had a lot of unequal bargaining power gone into it, and you have significant impacts on the parties, that that is going to be unconscionable. So you have to look at it in context. And what other courts, what courts have done too, is looked and said, okay, unequal bargaining power, plus you have all of these barriers to getting into arbitration. So here, you know, I've already argued that these are unconscionable, but there is this cost element, right? There's this, you have to go to Minnesota, right, to arbitrate these claims. And so there are inhibitions from the plaintiffs going to arbitrate to get an injunction. So let me back up a little bit. So even if the plaintiffs can go to arbitration to get an this contract. And I'd like to reserve the remainder of my time. Thank you. Good morning, Your Honors. May it please the Court, my name is Frank Skier-Romano, and together with Michael Gray, we represent the appellees and cross-appellants, NMC franchising, national maintenance contractors, Marsden services, and the individual director and we submit that the district court's decision is well-reasoned, supported by the record evidence, and should be affirmed except for a narrow issue regarding the form selection clause. But first, I want to address the unfortunate rhetoric regarding the national maintenance contractors family of companies in the briefs in this case. We are proud to represent these companies. They help people, many of whom are first generation immigrants, and they help them get on their feet and start their own independent businesses and help realize the American dream. The 17 franchisee plaintiff groups in this case, Your Honors, represent only a handful of the more than 150 national maintenance contractors, franchisees, currently operating in Washington and Oregon State. So with that, I want to turn to the first issue, and that is whether the plaintiff employees, the people who did not sign the franchise agreements, are bound by the arbitration provisions, Your Honors. And the first argument that I want to address is the argument that appeared in the appellant's opening brief, and that's that the arbitration agreement is expressly limited to the signatories to the franchise agreements. That argument, Your Honors, is a complete red herring. Yes, the franchise agreement says it is between you and us, and yes, it says that it will not confer any rights or obligations on anyone who is not a signatory to it. But those provisions have no bearing where traditional principles of contract and agency law would place or would treat a non-signatory as a signatory to the agreement. So courts apply these principles to bind non-signatories to contractual provisions, even when the contract explicitly limits applicability to signatories. And so while the plaintiff employees argue that they cannot be compelled to arbitrate because the plain language of the franchise agreements limits arbitration to signatories, that argument does not apply where traditional contract and agency law principles, like equitable estoppel, which the district court applied in this case, would place the plaintiff employees in the plaintiff buyer's shoes. So that's the first issue. I also want to address the Morgan versus Sundance case, Your Honors. Morgan has no... I mean, suppose we agree with you that even the people who didn't sign the agreement are bound by it, whether by estoppel or some other theory. What's your answer to the claim that the cost allocation provision is substantively unconscionable because it effectively prevents these people from being able to bring a claim at all? Certainly, Your Honor. So in terms of the cost allocation provision, it's undisputed that the costs of the arbitration under the rules, the AAA rules, would be split by the parties. So they've submitted evidence that it would be between $10,000 and $40,000 for the arbitrator. So they would face a burden of between $5,000 and $20,000 for the arbitrator. And we submit that the plaintiffs, many of them have the resources to do this. It's undisputed that some of these plaintiffs own multiple rental properties. They own houses. They own cars. They have savings accounts. Hold on, counsel. You started out your argument by talking about how the company is helping these immigrants throughout. I know a little about that. These folks generally don't have significant funds to dish out $5,000 to come into court just to get into court, whereas they could do that by filing a lawsuit and paying $400. Tell me why this provision is, in fact, appropriate. Well, Your Honor, this is a business dispute. These people own businesses. And there is unrebutted record evidence that Efren Martinez, for example, made $78,000 last year. He owns three houses. Two of them are rental properties. He has a car loan of $28,000. I think that it's fair. He has the resources to arbitrate his claims as he agreed to in the franchise agreement. I think it's important to remember... Backing up for just a second, do you agree with the legal premise of the argument on the other side that under both Washington and Oregon law, if the plaintiffs don't have the resources to pay for this, that it would be substantively unconscionable to have a provision like this one? Well, I think, Your Honor, it's important to remember that a desire to avoid expense is not a basis of claim for unconscionability here. Well, okay. But my question is just as a matter of state law, and maybe it's different between the two states or maybe it's not, but would it be substantively unconscionable to require the sharing of arbitration costs if the would-be plaintiff could establish that he or she would not be able to afford that? I don't think so, Your Honor, no. And I think Washington and Oregon law is in accord on this issue, and I think we cover that in our briefs, but I... Well, you say... This is what was confounding to me. You say, at the very least, a distinction should be made between those who can pay and those who can't pay. So, are you suggesting that the district court's going to go through each one of these and make some sort of inform-a-popris type determination as to affordability? Well, I think so, Your Honor, and I think that the burden was on the plaintiffs to make that argument and to put that evidence forward and to specifically point to the district court which plaintiffs truly don't have the resources to do this and which plaintiffs can do this. But they did put in a bunch of declarations from people who said, you know, I can't afford this, and so are we... Are those people just wrong, or is your position that they're only a fraction of the plaintiffs here and the others can? What do we do with those declarations? It's the latter, Your Honor. That's a small proportion of the plaintiffs, and I think it's important to remember how this argument was framed. At the district court and in the briefs in this case, they've treated them as a mass of plaintiffs, right? Where's the chart in their who has resources and who does not have resources to do this? And so I think it's also an issue of waiving that argument, Your Honor. They had the chance to frame the argument in that regard, and they didn't do it. They've treated the group of plaintiffs as a mass of plaintiffs. Well, we're now arguing about factual issues, so why wouldn't that in and of itself make summary judgment inappropriate here? Well, Your Honor, I don't think that there's a genuine issue of material fact on most of this. Aren't there genuine issues about understanding English, ability to pay? I mean, each one of these unconscionability, other than maybe the non-mutuality on the injunction, rests on factual determination, doesn't it? They do, but there are certain core undisputed facts here, Your Honor. Each of the plaintiff buyers, let's talk about the plaintiff buyers, they reached out to NMC on their own volition. That's undisputed. They were referred to NMC by family or friends. They were interested in buying a franchise business. That's undisputed. It's also undisputed that they all spoke at least some English. They aren't completely illiterate. There's a lot of people saying in their declarations that we took college classes in English. We took community college classes in English. Almost more than half of them admit that they received the franchise agreement and the franchise disclosure document two weeks before they signed the franchise. All of this, to me, suggests at a minimum, you need a trial to figure out who speaks English, who doesn't speak English, at what level of English is there unconscionability? Are they the same people that have a problem? Are they matched up with the people, for example, who maybe have more resources and could afford this? All of this, to me, just suggests that the summary judgment would be inappropriate here. Well, Your Honor, I think... How do you... You would, of course, disagree with that, but we've already raised factual issues here that I don't think would be appropriate for the Court of Appeals to sort out. What would be the procedural posture to sort all this out? Well, Your Honor, I think it goes to whether all these questions go to whether the plaintiffs had a meaningful choice in entering into these franchise agreements. And as I said, there are core undisputed facts above these factual skirmishes that show they did have a meaningful choice. They reached out to NMC on their own volition. There's no allegation that any of the plaintiffs were pressured into signing the franchise agreements at their meetings with NMC. There's no allegation that they were told they couldn't take these documents home, they couldn't have them translated, they couldn't go over them with lawyers or business advisors or friends and family who already owned NMC franchises. There's no allegation of that. There's also no allegation that NMC refused to answer their questions regarding these documents. All of that goes to procedural unconscionability, right? And you may have a strong case there, but as I understand both Washington and Oregon law, if they can establish substantive unconscionability, that's enough and the procedural part of it doesn't matter. Do you agree with that? I do agree with that, Your Honor. But I think that to the extent there are substantively unconscionable provisions in this franchise agreement, they are severable. There's a severance clause in the franchise agreement. Washington and Oregon courts regularly enforce severance clauses. And how would we sever the cost-sharing provision, right? Wouldn't we have to come up with our own idea of how to allocate costs and write that into the contract? Well, I think, Your Honor, it could be in order that NMC bears the costs of arbitration, and I think that it could be that simple. But I also... That's not really severing. That's just rewriting the provisions of the contract. And ultimately, should the court be in that position of having to rewrite these provisions? Right. So I also want to point out, Your Honors, that the costs of arbitration, right, it's between $5,000 and $20,000. There's also a prevailing party fee provision in the franchise agreement. So whether the claims are in court or in arbitration, the arbitration fees are going to pale in comparison to the attorney's fees in this case. The plaintiffs are represented by an army of attorneys. These are highly factual claims. And so I think that the incremental costs of arbitration are going to be relatively small here in comparison to the total costs of the case itself. I want to ask about another allegedly lopsided provision, and that is they can't go to court, but your clients can go to court for injunctive relief. Do I understand that correctly? That's correct, Your Honor. Injunctive relief in the event of a breach of the franchise agreement or a threatened breach of the franchise agreement. But only your clients can go to court for that. I don't see why that isn't unconscionable, because they might have, you might be breaching, for example, and they may need emergency. Like you say, well, you're misusing our trademark or, you know, you bastardized the trademark. And they might need to rush into court and say, well, in order to save our franchise, we can't, like, reprint all this stuff. We need to go to court and have an injunction. But they can't do that. Is that right? That's right. Well, but they can seek a preliminary injunction through the AAA, right? Rule 38 of the AAA rules allows the arbitrator. You know, a lot of times we see arbitrators feeling constrained by equitable relief. So why is it that your client can go to court and rush into court and get an injunction, but they can't? I mean, that in and of itself seems right there an unconscionable provision. And maybe it's not enough to tip that agreement. I don't know. Or maybe, as you say, it could be severed. But if it's one of several, you know, at one point severability becomes rewriting the arbitration agreement. And so that's why I think we're trying to juggle here. Is there any reason for the non-mutuality on the injunction? Yes, Your Honor. And it's due to the nature of the franchise relationship here. In a franchise system, all franchisees are operating under the same brand. In a single franchisee's failure to comply with material terms of the franchise agreement with respect to health and safety violations, unsafe business practices, that can be imputed on the entire franchise system and all the other franchisees and the franchisor because they're all operating under the same brand and the same trademarks. And so in these circumstances, franchisors must have the right to go to court to seek immediate injunctive relief. Right, because that's actually more effective than doing it through the arbitration. Is that what you're saying? Well, I don't know if I would say it's more effective, but these provisions, this type of carve-out is quite common in franchising and in franchise agreements. And like I said, I think the plaintiff- Counselor, just because something is common doesn't mean it's right. That's correct. Absolutely, Your Honor. And so to Judge McEwen's question, why is it that you all have that ability and they don't? Well, I think it's also an issue of the likelihood of that happening. I have yet to see a franchisee needing to run to court to prevent a franchisor from misusing its own trademarks, right? This sort of provision prevents a franchisee from imputing harm on the entire franchise system and all the other innocent franchisees who are abiding by the terms of their franchise agreements. And that's the justification for this type of injunctive relief carve-out. I see him out of time, unless the Court has any action. I just want to confirm, you're not making any argument that the Federal Arbitration Act would preempt state unconscionability law in this case, are you? No. No, Your Honor. Thank you, Your Honors. A couple of points. First, with regard to how this Court can decide this case, you're exactly right that this Court can decide the entire case by deciding that there's substantive unconscionability here. It need not reach the formation questions, it need not reach procedural unconscionability, it need not reach the equitable estoppel questions. If this Court finds that the provisions are substantively unconscionable and that they cannot be severed, that decides the case here. And both Washington and Oregon law say that unconscionability is a So, I also want to briefly address the loser-pay-as-a-prevailing-party provision in the contract. It's much more narrow than counsel for NMC makes it out. It recovers costs and expenses, it doesn't cover attorney's fees. And it is limited to actions brought for breach of contract, which of course we have many other claims here as well. And then finally, the argument I want to a few minutes on is this argument that even if this Court finds that it's not unconscionable, that the agreement is not unconscionable or that the provisions can be severed, regardless, the plaintiffs who are not signatories to the agreement cannot be bound by it under any theory of equitable estoppel. We argue that following the Supreme Court's decision in Morgan v. Sundance that the formulation of equitable estoppel, the direct benefits test, applied by the District Court and previously articulated by this Court in Comer and Nguyen, is inappropriate because it's arbitration specific. And that general equitable estoppel principles should apply. NMC, and I should say, under general equitable estoppel principles, under both Oregon and Washington law, and frankly all 50 states, there must be some kind of detrimental reliance. NMC has no argument that the non-signatory plaintiffs, or rather that NMC, detrimentally relied on any action by the non-signatory plaintiffs. And so they cannot win there. But even if Morgan doesn't apply for some reason or that this Court finds that it's not an arbitration specific rule or something else, even under the direct benefits equitable estoppel test, the non-signatory plaintiffs cannot be bound to arbitrate. And the reason is because it requires a knowing exploitation. To bind a non-signatory requires a knowing exploitation of the agreement. And we don't have that here. And so what all the cases that deal with this, where they found or they bound the non-signatory, have required some sort of affirmative action on the part of the non-signatory, like suing to get benefits, or suing for a breach of the contract, or suing to get benefits under the contract, or contacting the defendant directly to get those benefits. We don't have any of those kinds of affirmative actions here. And so therefore they can't be bound under that theory of equitable estoppel. If there are no further questions. Thank you. Thank both counsel for their helpful arguments this morning. And the case is submitted and we are adjourned.
judges: McKEOWN, MILLER, UNKNOWN